UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Joel R. Holland, | ) | CASE NO. 1:06 CV 2875 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Deputy Matthew Bosworth, et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 21). For the following reasons, the motion is DENIED.

**Facts**

Plaintiff, Joel R. Holland, filed this lawsuit in the Geauga County Common Pleas Court against defendants, Deputy Matthew Bosworth, Sheriff Dan McClelland and Geauga County Sheriff's Department. The matter was thereafter removed to this Court by defendants on the basis of federal question jurisdiction.

The Complaint alleges that on October 28, 2005, defendant Bosworth, while responding to a call on Leroy Road and "after handcuffing plaintiff and escorting plaintiff out

1

the front door, grabbed plaintiff by the back of the pants and threw plaintiff off the ground and on to an end table, injuring plaintiff's face, shoulder and arm." The Complaint asserts eight claims for relief. Count One alleges assault and battery. Count Two alleges excessive force. Count Three alleges intentional infliction of emotional distress. Count Four alleges negligent infliction of emotional distress. Count Five alleges unreasonable seizure. Count Six alleges malicious prosecution. Count Seven alleges negligent training and supervision. Count Eight alleges respondeat superior.

The parties thereafter agreed to the dismissal of those portions of Count Five asserting that defendants McClelland and the Geauga County Sheriff's Department intentionally failed to train and supervise and that they permitted an unconstitutional custom of excessive use of force, and Count Seven which asserts that defendants McClelland and the Geauga County Sheriff's Department negligently failed to train and supervise.

Defendants thereafter moved for summary judgment as to all remaining claims with the exception of those asserted against Deputy Matthew Bosworth arising from the use of force. Plaintiff conceded that summary judgment was proper as to these claims with the exception of the malicious prosecution claim. Accordingly, the sole issue before the Court is whether summary judgment is warranted as to plaintiff's malicious prosecution claim against defendant Bosworth. The following facts are taken from the evidence submitted by the parties.

In the early morning hours of October 28, 2005, Deputy Matthew Bosworth of the Geauga County Sheriff's Office responded to a call for a domestic dispute between plaintiff and Kathy Frasure. Prior to his arrival, Bosworth learned that plaintiff had an active warrant

for his arrest pertaining to a previous domestic violence matter.  (Bosworth aff.)

Plaintiff's deposition testimony reveals the following.  Плaintiff had lived with Frasure since 2001.  Since 2004, Frasure's two children from a prior marriage had lived with plaintiff and Frasure.  In 2005, Children's Services removed the children from the home after Frasure was charged with vehicular homicide.[1]  Plaintiff, who was intoxicated at the time, was also in the car when this incident occurred, as well as Frasure's children.[2]  Plaintiff moved out of the house around that time on the advice of Frasure's attorney who was handling the child custody matter.  Plaintiff and Frasure were fighting over who was responsible for the loss of custody of the children. (ptlf. depo. 16-21)

On the night of October 27, 2005, plaintiff was staying at a campground and walked about four miles to Frasure's house.  Plaintiff had been drinking alcohol.  Frasure let plaintiff in the house and both plaintiff and Frasure drank more alcohol.  The two began to argue. (pltf. depo. 77-83) Frasure called 911.  (Frasure depo. 33-34) Plaintiff knew that Frasure called the Geauga County Sheriff's Office and that he had an unpaid "fine" (warrant). Plaintiff left the house and hid in a dilapidated building near Frasure's house before the sheriffs arrived.  When plaintiff saw the sheriffs leave from his hiding place, he went back into Frasure's house.  Apparently, Frasure called the Sheriff's Office a second time.  Plaintiff then heard a knock on the door and Frasure let the sheriffs back into the house. (pltf. depo.

---

[1] Frasure and plaintiff were married in 2006.  Frasure is currently incarcerated in connection with the vehicular homicide.  (Frasure depo. 5-9)

[2] In fact, two other people were also in the car.  Frasure denies responsibility for the accident, "Because I didn't kill that woman.  I wasn't even the driver." (Frasure depo. 32) Plaintiff does not know who was driving because he was intoxicated and apparently could not remember.  (pltf. depo. 19)

3

83–88)

Plaintiff further testified that when the sheriffs arrived the second time, he was sitting in a recliner. Deputy Matthew Bosworth entered first followed by a deputy with a K-9. Bosworth asked plaintiff twice to stand up and plaintiff responded that if Bosworth "moved the fucking dog back [he] would get up" because he "wasn't getting bit." After the K-9 was moved back, plaintiff jumped up, turned around, put his hands behind his back with clenched fists and was handcuffed. The K-9 unit went outside. Plaintiff was mad at Frasure for calling the sheriffs back to the house. Plaintiff was also mad at Bosworth because "he thought he was king shit of the island" and he "didn't like his attitude." Plaintiff then asked Bosworth whether he was a public servant. When Bosworth responded yes, plaintiff said, "Well, you asshole in a hat, get me a glass of water, then." Plaintiff saw Bosworth get angry and "his face turn[ed] beat red." According to plaintiff, Bosworth then spun around and as he was leading plaintiff out of the house said, "I'm going to teach you a lesson." He then threw plaintiff into a table. Plaintiff told Bosworth that "you fucking broke my shoulder, that's exactly how I said it, too." Plaintiff also told Bosworth, "I [am] going to sue you." (pltf. depo. 100-111, 121-122)

Bosworth drove plaintiff to a local BP station and transferred him to another deputy because Bosworth's shift had ended.[3] Deputy Sheriff James Bartlett, who was beginning his shift at 5:00 a.m. received a call from the sergeant to meet two other deputy units to transport

---

[3]  En route to the station, plaintiff "screamed" at Bosworth, "I told him that I was going to have his badge, he was definitely going to be getting sued, I said I don't think the county has enough money to pay for this one. I said I hope you can deal with the cameras for TV. I told him I don't know how his wife puts up with him. I said if you're like that in public, you must be a piece of shit." (pltf. depo. 126)

an arrested subject.  Bartlett met Bosworth and the K-9 unit.  Bosworth did not indicate to Bartlett that there was any other reason for arresting plaintiff other than the outstanding warrant.  (Bartlett depo. 4-10)

Plaintiff told Bartlett that he needed to go to the hospital and that Bosworth beat him up.  Bartlett told plaintiff that he needed to be booked first.  (pltf. depo. 128) Upon arrival at the Geauga County Sheriff's Office, Bartlett filled out the transport sheet and stated thereon that plaintiff complained of a shoulder injury. Bartlett also indicated on the sheet that plaintiff did not resist arrest.  (Bartlett depo. 15-17)

Corrections Officer Douglas Orosz, who was just completing his shift, assisted upon plaintiff's arrival at the Sheriff's Office.  Orosz heard plaintiff complain of shoulder pain, that he was thrown into a coffee table and that he was going to sue the Sheriff's Office. (Orosz depo. 1-8, 14-15) Corrections Officer Erik Phillips, who was beginning his shift at 6:00 a.m. on October 28, was the booking officer for plaintiff.  Phillips observed that plaintiff was intoxicated, and plaintiff told him that his shoulder hurt and that he was slammed into a coffee table.  Phillips recorded that plaintiff was arrested because of a bench warrant and contempt of court.   (Phillips depo. 5-9, 17)

Plaintiff appeared in municipal court that morning, and continued to be held by the Geauga County Sheriff's Office due to an outstanding warrant in Lake County.  Early that afternoon plaintiff was taken to the hospital for an x-ray which revealed a fracture.  On his return from the hospital, plaintiff learned that he had been charged with resisting arrest.  (pltf. depo. 129-133)

Bosworth avers that because of plaintiff's fleeing, hiding from deputies, refusal to

5

comply with arrest instructions, disorderly conduct during the arrest and sudden resistance to being led from the residence, Bosworth anticipated charging him with resisting arrest. Because his shift was ending and his knowledge that plaintiff would be held on the warrant, Bosworth decided to process the resisting arrest charge when he returned to work later that day. Bosworth then learned that plaintiff was alleging excessive force. Bosworth spoke to his supervisors, Sergeant Johnson and Lieutenant Niehus, and informed them that he had already planned to charge plaintiff with resisting arrest. Based on the information from the conversation and that set forth in the Narrative Supplement prepared by Bosworth in conjunction with his Ohio Uniform Incident Report, both supervisors advised Bosworth to initiate charges of resisting arrest. The charge was then referred to the City of Chardon's Prosecutor's Office who presented the case to the Chardon Municipal Court. A bench trial resulted in an acquittal. (Bosworth aff.)

This matter is now before the Court upon defendants' Motion for Summary Judgment on the malicious prosecution claim.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

> together with affidavits," if any, which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of [his] pleadings, but [his
> response], by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is genuine issue
> for trial. If he does not respond, summary judgment, if
> appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the

7

evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Discussion**

To succeed on a claim of malicious criminal prosecution, under Ohio law, a plaintiff must show three elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause and (3) termination of the prosecution in favor of the accused. *Logsdon v. Hains,* 492 F.3d 334 (6th Cir. 2007).

Defendants assert that plaintiff cannot satisfy the first and second elements of this claim because Bosworth had no malice and had probable cause in instituting the charges as evidenced by the following facts known to him when he initiated the charge of resisting arrest against plaintiff:

> • Plaintiff fled from the residence and hid from the deputies when he knew they were there to execute a lawful arrest.
>
> • Plaintiff twice refused orders of Bosworth to stand up from the chair so that he could execute the arrest.
>
> • Plaintiff exhibited verbal and physical danger cues when he used profanity toward Bosworth, when he jumped from the chair toward Bosworth, and when he had clenched fists while Bosworth was executing the arrest.

Defendants assert that these facts as well as those set forth in Bosworth's Uniform Incident Report and the advice of his two superior officers negate plaintiff's claim.

Plaintiff asserts that malice is demonstrated by the fact that Bosworth did not mention anything about plaintiff resisting arrest until it became clear that plaintiff suffered a fractured shoulder, and the charge was made to justify and explain plaintiff's injury. Additionally, plaintiff contends that while he was impolite, intoxicated and obnoxious in his behavior

8

toward Bosworth, he did not resist arrest but rather stood up and placed his hands behind his back to be cuffed and, thus, there was no probable cause to conclude that he was resisting arrest.

For the following reasons, because there are issues of fact as to malice and probable cause, summary judgment is not appropriate on the malicious prosecution claim.

Probable cause "exists when the facts and circumstances are such that a cautious individual would be warranted in the belief that the person accused is guilty of the offense with which he or she is charged." *Norwell v. Cincinnati*, 133 Ohio App.3d 790 (1999) Plaintiff was charged under Ohio Revised Code §2921.33 which prohibits a person from resisting arrest "recklessly or by force." In Ohio, the courts have interpreted this statute to "prohibit physical activity which prevents or delays an arrest. " *State v. Keegan*, 67 Ohio App.3d 824 (1st App. Dist.1990). In *Keegan*, for example, defendant's conviction for resisting arrest was affirmed where he "went limp," requiring the police officers to carry him to the police vehicle. In such a situation, the defendant's physical activity delayed his arrest. Likewise, in *State v. Williams,* 84 Ohio App.3d 129 (12th Dist. 1992), defendant was found to have resisted arrest where he fled into a wooded area, ignoring a deputy's commands to stop. After he stopped fleeing, the defendant failed to follow the deputy's instructions to place his hands on his head and walk backwards to the deputy.

Viewing the evidence in a light most favorable to plaintiff, reasonable minds could differ in this case as to whether plaintiff's actions amounted to resisting arrest. Here, plaintiff fled Frasure's house when he knew the deputies were arriving with a valid warrant for his arrest. Nevertheless, plaintiff had not been commanded to stop as the deputies had not yet

9

arrived.  Plaintiff failed to comply with Bosworth's first two instructions to stand up from the chair.  Plaintiff testified, however, that he would not stand up while the K-9 was there as he was afraid of being bit by the dog.  When the dog was moved, plaintiff stood up.

Defendants cite to *State v. Magnuson,* 2 Ohio App.3d 21 (1st Dist. 1981), which is not apposite.  In *Magnuson,* defendant's rape of his victim was interrupted by a police officer. Defendant ran into a wooded area with the officer in pursuit. Ultimately, defendant broke into an apartment in an attempt to conceal himself from the police officer.  Defendant was convicted of rape and aggravated burglary.  The latter was reversed by the appellate court which recognized that the aggravated burglary statute requires trespass into an occupied structure with the purpose to commit a felony therein.  The felony had been identified as an escape which is defined as purposely breaking detention.  The evidence did not support a detention, however, as the police officer had not arrested and established control over defendant.  Rather, the court found that defendant's avoidance of apprehension constituted resisting arrest.  Defendants apparently argue that the two cases are similar in that the defendant in *Magnuson*, like the plaintiff herein, had not been under police control when he attempted to avoid apprehension.  Plaintiff herein, however, did not flee with the deputies in physical pursuit.  Rather, plaintiff hid while knowing the deputies were looking for him.

As such, issues of fact preclude a finding by this Court that Bosworth had probable cause to charge plaintiff with resisting arrest.  Additionally, malice may be inferred from the absence of probable cause in appropriate circumstances.  *Harris v. United States,* 422 F.3d 322 (6th Cir. 2005) (citations omitted).

For these reasons, defendants' Motion for Summary Judgment on the malicious

prosecution claim is denied.

       IT IS SO ORDERED.


                                /s/ Patricia A. Gaughan
                              PATRICIA A. GAUGHAN
                              United States District Judge

Dated: 12/12/07